UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRIUS D. HARDRICK,

                Petitioner,

v.                                    CASE NO. 2:08-CV-14870
                                    HONORABLE NANCY G. EDMUNDS

BLAINE LAFLER,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

**I.**    **Introduction**

Michigan prisoner Demetrius Hardrick ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 challenging his 2004 Wayne County Circuit Court convictions for first-degree premeditated murder, MICH. COMP. LAWS §750.316, assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to life imprisonment without the possibility of parole, a concurrent term of 20 to 30 years imprisonment, and a consecutive term of two years imprisonment on those convictions.

In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, the jury instructions, the conduct of the prosecutor, and the effectiveness of trial and appellate counsel. Having reviewed the matter, the Court concludes that Petitioner is not entitled to federal habeas relief and denies the petition. The Court also denies a certificate of appealability.

1

## II.    Facts and Procedural History

Petitioner's convictions arise from the fatal shooting of Dionte Mack and the nonfatal shooting of Lawrence Landrum at a vacant house in Detroit, Michigan on January 1, 2000.  At trial, Lawrence Landrum testified that he had known Petitioner and Dionte Mack for years.  On the afternoon of December 31, 1999 he, Mack, and two other friends, James Lloyd and John King, met at 14666 Troester, a vacant house across the street from his mother's home.  King had a.22 caliber revolver and Mack had a .25 caliber automatic.  They were all drinking.  Petitioner arrived sometime later and was armed with a gun.  Petitioner admired Landrum's puppy.  Petitioner left, but returned around 11 :00 p.m.  Landrum and Petitioner went to a club and returned sometime after midnight.  King was gone and Mack was sleeping on the sofa.  Landrum went to the bathroom.  When he returned, he noticed his puppy in Petitioner's coat.  Landrum took the dog and put him in the basement.

Shortly thereafter, Petitioner pulled out a .38 caliber handgun, which he put to Mack's head and cocked repeatedly.  Landrum told Petitioner to put the gun away.  Petitioner put it in his pocket.  As Landrum walked to the door and turned back, Petitioner shot him in the head.  Landrum fell to the ground.  Mack woke up and ran to the back of the house.  Petitioner chased Mack.  Landrum heard three shots coming from the back of the house.  Petitioner returned and fired at Landrum again.  Landrum reached for the gun and was shot in the hand.  The two men struggled over the gun.  Landrum grabbed it and threw it out the door.  Landrum then jumped out of a window and ran to his mother's house.  He told his sister that Petitioner had shot him and asked her to call 911.  When the police arrived, Landrum told them that Petitioner had shot him.  Landrum was taken to the hospital, where he remained for about a month.

2

Stephanie Landrum, Lawrence Landrum's sister, testified that she lived on Troester street with her mother, her children, and her two brothers. She described 14666 Troester as a hangout. She was at home sleeping on New Years morning when she was awakened at 7:00 a.m. by her brother Lawrence, who had a bullet protruding from his head. He said that he had been shot and told her to call 911. She did so at 7:12 a.m. A tape of the call was played for the jury.

John King testified that he knew Petitioner, Landrum, Mack, and Lloyd. On December 31, 1999, he was at 14666 Troester for a period of time. When he returned at 10:00 p.m., Mack, Landrum and Lloyd were present. Lloyd left about 40 minutes later. Petitioner arrived at about 3:30 a.m. Petitioner had a .38 caliber revolver, Mack had a .25 caliber handgun, and King had a .22 caliber rifle. According to King, Petitioner admired Landrum's dog and said he wanted it. Landrum put the dog in the basement. Petitioner loaded his gun with bullets from a box at the house and fired his gun outside. Mack fired his weapon outside as well. Petitioner reloaded the gun and left with Landrum to attend a party. King remained at the house with Mack, who fell asleep on the couch. King left at 4:30 or 5:00 a.m. and walked to his house down the street. From there, he observed Petitioner and Landrum return 30 to 40 minutes later. King went to bed. When he awoke, the area was teeming with police. King went to 14666 Troester, was arrested, and told that he was going to be charged with murder. King was released after Landrum gave his police statement.

Detroit Police Officer Micah Hull testified that he and his partner, Ernie Harris, went to Landrum's home to investigate the shooting. They arrived shortly after 7:00 a.m. He observed Landrum bleeding from the left side of his head fading in and out of consciousness. Landrum said that he was shot at 14666 Troester by Demetrius Lockett following a disagreement about

3

Landrum's dog.  Hull and Harris went to 14666 Troester and observed a shattered door window and blood on the walls and floors.  They searched the house.  A black male, later identified as Dionte Mack, was hunched over on his knees in the closet with gunshot wounds.  They secured the scene for detectives and evidence technicians.  Detroit Police Officer Ernie Harris confirmed that he and Hull investigated the shooting and corroborated Hull's testimony.

Detroit Police Officer Crystal Hunter testified that she and her partner, Officer Milton Perry, also responded to the shooting.  Hunter stated that she spoke with Landrum who told her that he was shot at 14666 Troester by Demetrius Lockett.  Hunter waited with Landrum for about twenty minutes while he received medical attention before crossing the street.  Officers Harris and Hull were already at that location.  Hunter made notifications and waited for homicide detective to arrive at the scene.

Detroit Police Sergeant Nicholas Giaquinto, the officer in charge of the case, testified that he obtained a statement from Landrum on January 2, 2000 identifying Petitioner as the shooter and secured a warrant for Petitioner's arrest.  On December 13, 2003, he learned that Petitioner was in Kansas.  Petitioner was extradited to Michigan for trial.

Detroit Police Sergeant Howard Phillips, an evidence technician and expert in evidence collection, testified that he reported to both Troester Street locations on the day of the shooting.  He photographed and prepared diagrams of both houses and collected evidence, including several
live bullets and spent casings from 14666 Troester.  He did not locate any weapons in the house.  Based upon his training in blood spatter interpretation, Phillips concluded that Mack was likely in an upright position when he was shot.

4

Detroit Police Sergeant Sherrie Meisel, an expert in laser fingerprint development, testified that she examined various spent casings and spent slugs found at 14666 Troester with negative results. According to Meisel, spent slugs are not suitable for raising a fingerprint, and she could not detect any usable ridged on the casings.

Detroit Police Officer David Pauch, an expert in firearms identification and tool markings testified that he examined two .38 caliber lead bullets, two lead fragments, and three fired casings recovered from 14666 Troester. After microscopic examination, he concluded that the bullets were all fired from a single weapon and that the casings were all fired from a single weapon. He could not determine whether the bullets and casings were fired from the same weapon. He was unable to make any determination as to a .25 caliber automatic fired cartridge and a .22 caliber fired cartridge case because he had nothing for comparison.

Wayne County Medical Examiner Carl Schmidt testified that he examined the 21-year-old body of Dionte Mack on January 2, 2000. Schmidt observed three gunshot wounds. One entered the right temple above the right ear and was surrounded by a rim of stippling, indicating close range firing. According to Dr. Schmidt, "typically a gunshot wound with stippling indicates either an execution kind of shot or suicide" and that it is "generally the last to be sustained" because the victim has already become incapacitated and approachable. Another entered the right side of the back of the head, proceeded into the skull and the brain, ending in the left occipital lobe. The third was in the lateral aspect of the right arm near the shoulder. There was no evidence of close range firing for the second and third gunshot wounds. The cause of death was multiple gunshot wounds, and the manner of death was homicide.

5

Petitioner did not testify at trial.  His defense was that he did not commit the shooting. At the close of trial, the jury found him guilty of first-degree premeditated murder, assault with intent to murder, and felony firearm.  The trial court sentenced him to life imprisonment without the possibility of parole, a concurrent term of 20 to 30 years imprisonment, and a consecutive term of two years imprisonment.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that: (1) the prosecution presented insufficient evidence of premeditation and deliberation to support his first-degree murder conviction, (2) trial counsel was ineffective for failing to object to flight evidence and for failing to object to the lack of DNA evidence, (3) the trial court erred in instructing the jury on the flight evidence, and (4) the prosecutor engaged in misconduct by commenting on the defense failure to present evidence and stating that defense counsel was attempting to mislead the jury.  The court denied relief and affirmed Petitioner's convictions.  *People v. Hardrick*, No. 256124, 2005 WL 2659521 (Mich. Ct. App. Oct. 18, 2005) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  *People v. Hardrick*, 474 Mich. 1070, 711 N.W.2d 31 (2006).

Petitioner then filed a motion for relief from judgment with the state trial court asserting that: (1) trial counsel was ineffective for failing to investigate and present alibi witnesses and (2) appellate counsel was ineffective for failing to raise this issue on direct appeal.  The trial court denied the motion pursuant to Michigan Court Rule 6.508(D), finding that Petitioner had failed to establish cause and prejudice because the claims lacked merit.  *People v. Hardrick*, No. 04-001402-01 (Wayne Co. Cir. Ct. Feb. 12, 2007) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to establish

6

entitlement to relief under MCR 6.508(D)." *People v. Hardrick*, No. 280729 (Mich. Ct. App. Jan. 4, 2008) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Hardrick*, 482 Mich. 892, 753 N.W.2d 195 (2008).

Petitioner thereafter filed the instant petition, raising the claims he presented to the Michigan appellate courts on direct appeal and collateral review of his convictions. Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are barred by procedural default. Petitioner has filed a reply to that answer.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of

7

facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, _ S. Ct. _, 2011 WL 148587, *11 (Jan. 19, 2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories

8

supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, _ U.S. _, _, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington*, slip op. at *10.  Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue.  *See Stewart v. Erwin*, 503 F.3d 488,

9

2:08-cv-14870-NGE-SDP   Doc # 16   Filed 02/10/11   Pg 10 of 26   Pg ID 1230

493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See, e.g., Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.    Discussion

### A.    Sufficiency of the Evidence

Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence of premeditation and deliberation to support his first-degree murder conviction. Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), *cert. den.* _ U.S. _, 130 S. Ct. 1081 (2010). Furthermore, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The

mere existence of sufficient evidence to convict therefore defeats a petitioner's claim."
*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *See* MICH. COMP. LAWS § 750.316; *People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480 (1998). Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992); *see also People v. Abraham*, 234 Mich. App. 640, 656, 599 N.W.2d 736 (1999). Circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of an offense, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).

Applying these standards, the Michigan Court of Appeals determined that the prosecution presented sufficient evidence to support Petitioner's first-degree murder conviction. The court explained:

> The prosecutor theorized that defendant killed Mack because Mack witnessed defendant shoot Landrum. The prosecutor presented evidence that defendant was involved in an altercation with Landrum while Mack was asleep on a couch. Landrum testified that Mack awoke after defendant fired a gunshot that struck Landrum in the head. Mack immediately ran to the back of the house and defendant ran after him. Officers later found Mack's body in a bedroom closet. According to the medical examiner, Mack sustained three gunshot wounds. The shots to the back of Mack's head and to the right arm were delivered at a distance of more than four feet and would have immediately incapacitated him. The medical examiner opined that the third shot was delivered to Mack's temple, only inches away from his head, execution style. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a reasonable jury to find

> that defendant had sufficient time to contemplate his actions after the
> incapacitating shots and that he subsequently fired the shot to Mack's temple
> with premeditation and deliberation.

*Hardrick*, 2005 WL 2659521 at \*1.

This decision is neither contrary to *Jackson* nor an unreasonable application of federal law or the facts. The testimony of the surviving victim, coupled with Petitioner's use of a firearm, his close range firing at the victims, and his actions in chasing and gunning down the deceased, provided sufficient evidence to support Petitioner's first-degree murder conviction. Based upon the trial testimony and forensic evidence, a reasonable jury could have concluded that Petitioner was responsible for the shooting and that he acted with the requisite intent.

To the extent that Petitioner challenges the credibility and weight to be accorded the evidence presented at trial, he is not entitled to relief. It is well-settled that "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. It is the job of the fact-finder, not a federal habeas court, to resolve credibility conflicts. *See Martin*, 280 F.3d at 618; *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). This Court on habeas review cannot re-weigh the evidence or re-assess witness credibility.

Lastly, to the extent Petitioner challenges the state court's construction or application of state law, he is not entitled to relief. "A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254. A federal court may not issue the writ on the basis of a perceived error of state law." *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421

U.S. 684, 691 (1975).  Given the trial testimony, the Court finds that the state court's decision that a rational trier of fact could find the essential elements of first-degree premeditated murder beyond a reasonable doubt was reasonable.  Habeas relief is not warranted on this claim.

###    B.    Jury Instruction Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in instructing the jury on the evidence of flight.  The trial court instructed the jury that Petitioner had been found in another state and extradited to Michigan and gave a standard instruction on flight evidence.  Respondent contends that this claim lacks merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned.  Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly.  *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999).  A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record.  *See Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).  State law instructional errors rarely form the basis for federal habeas corpus relief.  *See Estelle*, 502 U.S. at 71-72.

The Michigan Court of Appeals considered this claim and found that even if the trial court erred, such error was harmless given the overwhelming evidence of Petitioner's guilt presented at trial.  *See Hardrick*, 2005 WL 2659521 at *2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, Petitioner has not shown that the trial court erred in instructing the jury. The evidence of flight was relevant and admissible under Michigan law. *See People v. Goodin*, 257 Mich. App. 425, 432, 668 N.W.2d 392 (2003); *People v. Coleman*, 210 Mich. App. 1, 4, 532 N.W.2d 885 (1995). Although the United States Supreme Court has expressed skepticism as to the probative value of evidence of flight, *see Wong Sun v. United States*, 371 U.S. 471, 483 n. 10 (1963), it has recognized that such evidence may be relevant to show consciousness of guilt. *See United States v. Scheffer*, 523 U.S. 303, 331 (1998) (dissenting opinion of Stevens, J.). Federal appellate courts have also held that evidence of flight is admissible to show consciousness of guilt. *See United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989); *accord United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002); *United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002). The admission of flight evidence is not fundamentally unfair. *See, e.g., Wright v. Jamrog*, No. 04-CV-71585-DT, 2005 WL 3262544, *7 (E.D. Mich. 2005) (admission of flight evidence was proper under Michigan law and did not justify habeas relief); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 580 (E.D. Mich. 2004), *aff'd* 398 F.3d 783 (6th Cir. 2005). Petitioner has failed to demonstrate that the trial court's flight instruction was improper or denied him a fundamentally fair trial.

Second, even if the trial court's instruction was improper, Petitioner is not entitled to relief. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in

14

"virtually all" habeas cases); *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit).  Here, it is highly unlikely that the trial court's jury instruction affected the jury's verdict.  As explained by the Michigan Court of Appeals, the surviving victim's testimony and the gun evidence provided significant evidence of Petitioner's guilt of the charged offenses.  Habeas relief is not warranted on this claim.

### C.      Prosecutorial Misconduct

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by shifting the burden of proof and denigrating defense counsel.  Respondent contends that these claims are barred by procedural default because Petitioner failed to object to such matters at trial.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and

expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on these claims. In dismissing these claims, the court relied upon Petitioner's failure to object at trial. *See Hardrick*, 2005 WL 2659521 at *2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied these claims based upon a procedural default – the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

16

To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

In this case, Petitioner alleges ineffective assistance of trial counsel as cause to excuse his procedural default. This particular claim of ineffective assistance of counsel, however, has not been exhausted in the state courts. A claim of ineffective assistance of counsel asserted as cause to excuse a procedural default is an independent constitutional claim which requires proper exhaustion in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Because Petitioner has not exhausted this claim of ineffective assistance of trial counsel in the state courts, he cannot rely upon it to establish cause to excuse his default of his prosecutorial misconduct claims. *See, e.g., Jacobs v. Mohr*, 265 F.3d 407, 417-18 (6th Cir. 2001).

The Court need not address the issue of prejudice when a habeas petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114 F. Supp. 2d 633, 638 (E.D. Mich. 2000). Nonetheless, the Court notes that Petitioner cannot establish prejudice as the prosecutorial misconduct claims lack merit for the reasons stated by the Michigan Court of Appeals in reviewing them for plain error. *See Hardrick*, 2005 WL 2659521 at *3. Petitioner has failed to show that the prosecutor's comments were improper and/or were so flagrant as to render his trial fundamentally unfair. *See, e.g., Donnelly v. DeChristoforo*, 416 U.S. 637, 643

17

(1974); *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002).

Petitioner has also not shown that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. *See* discussion *infra*. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### D.  Ineffective Assistance of Trial Counsel

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to bring the lack of DNA evidence to the jury's attention, for failing to object to testimony that Petitioner was found in Kansas nearly four years after the shooting and the subsequent jury instruction on flight evidence, and for failing to investigate and call purported alibi witnesses. Respondent contends that these claims lack merit and/or are barred by procedural default.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning

18

as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner

must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors

must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside

the wide range of professionally competent assistance" in order to prove deficient performance.

*Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at

689.  Counsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The

petitioner bears the burden of overcoming the presumption that the challenged actions were

sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to

undermine confidence in the outcome.  *Id.*   "On balance, the benchmark for judging any claim

of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of

the adversarial process that the [proceeding] cannot be relied on as having produced a just

result."  *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of

ineffective assistance of counsel claims arising from state criminal proceedings is quite limited

on habeas review due to the deference accorded trial attorneys and state appellate courts

reviewing their performance.  "The standards created by *Strickland* and § 2254(d) are both

'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington*,

2011 WL 148587 at *13 (internal and end citations omitted).

Petitioner first asserts that trial counsel was ineffective for not bringing the lack of DNA evidence to the jury's attention. Citing the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim, essentially finding it to be belied by the record. The court explained in relevant part:

> We reject the argument that defense counsel was ineffective for not bringing the lack of DNA evidence to the attention of the jury. In his closing argument defense counsel seized on this subject, questioning why blood samples were not taken from the floors of the crime scene and why the police did not seek to determine the source of the blood. To the extent possible defense counsel raised the issue of the lack of DNA evidence placing defendant at the crime scene. It was up to the jury to determine the weight given to his argument. Defendant has not demonstrated that defense counsel was ineffective in this regard.

*Hardrick*, 2005 WL 2659521 at *2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record reveals that trial counsel did question why the authorities did not analyze blood samples from the scene of the crime to determine the source of the blood. Such action was reasonable under the facts of this case. Petitioner has failed to show that counsel erred or that he was prejudiced by counsel's performance in this regard.

Moreover, to the extent that Petitioner seems to assert that trial counsel was ineffective for failing to request DNA testing, he is not entitled to relief. He has presented no evidence that such testing would have exculpated him or otherwise benefitted the defense. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of

ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).  Moreover, trial counsel may have reasonably been concerned that DNA testing, if available, would have harmed the defense and that the better strategy was to question the thoroughness of the police investigation.  Such an approach was reasonable given the facts at hand.  Petitioner has failed to establish that counsel was ineffective.[1]

Petitioner next asserts that trial counsel was ineffective for failing to object to testimony that he was arrested in Kansas nearly four years after the crime and extradited to Michigan and for failing to object to the jury instruction on flight.  The Michigan Court of Appeals denied relief on this claim, stating as follows:

> Defendant also asserts that trial counsel was ineffective for failing to object to testimony that defendant was found in Kansas approximately four years after the shootings occurred. He asserts the testimony was presented as evidence of flight. But at the time the evidence was presented the prosecutor did not intimate that defendant fled. Rather, the evidence was presented to explain why the case was being tried so many years after the shootings occurred. Defense counsel was not ineffective for failing to object to the testimony. *See People v. Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) (counsel is not required to make a futile objection).

*Hardrick*, 2005 WL 2659521 at *2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  The testimony regarding Petitioner's arrest in Kansas and extradition to Michigan was relevant and admissible to explain the delay in his prosecution, and potentially as

---

[1]The Court notes that a state prosecutor has no obligation to investigate or discover exculpatory evidence or conduct additional scientific testing which might lead to exculpatory evidence.  *See Arizona v. Youngblood*, 488 U.S. 51, 59 (1988).

evidence of flight.  Counsel may have reasonably decided that an objection to the testimony was

futile.  Moreover, the record indicates that counsel argued that there was no clear evidence of

"flight" and objected to the trial court giving an instruction on flight.  In response, the trial court

instructed the jury that Petitioner was found in another state and extradited to Michigan and

then instructed them about the proper consideration of such evidence.  Petitioner has failed to

establish that counsel erred or that he was prejudiced by counsel's conduct.

   Lastly, Petitioner asserts that trial counsel was ineffective for failing to call alibi

witnesses.  He presents affidavits from his family and/or friends, Tissie Marchbanks, Renidka

Green, and Shirley Burnett, which indicate that Petitioner was at a gathering with them on New

Years' Eve 1999.  Petitioner first presented this claim to the state courts in his motion for relief

from judgment.  The state trial court concluded that Petitioner had not shown that trial counsel

was ineffective and denied relief, finding that the affidavits did not provide Petitioner with an

alibi for the time of the shooting.  The court explained in pertinent part:

> The affidavit of Tissie Marchbanks states that she witnessed the defendant at
> 19146 Healy Street in Detroit, at 11:30 or 11:45 p.m. on the night of the
> shootings. She states that he left the house to go to the store about midnight. She
> states that the defendant left her house after the party sometime between 4:00
> a.m. and 5:00 a.m. Ms. Marchbanks states that she told the defendant's trial
> attorney that she would testify for him but the attorney never called her back.
>
> The affidavit of Renidka Green states that she accompanied the defendant to her
> relative's house on Healy Street at 10:30 p.m. the night of the shootings. She
> states that the defendant left with another man to go to the store at 11:30 p.m. for
> more drinks. Ms. Green states that she and the defendant left the house on Healy
> Street about 4:00 a.m. She states that she told the defendant's attorney that she
> would testify for him at trial but he never called her back.
>
> The affidavit of Shirley Burnett states that the defendant was at her house
> celebrating with friends and family on the night of the shooting. She states that
> he left the house with another man at 11:30 p.m. to go to the store for more
> drinks. She states that she would have testified for the defendant if the trial

22

attorney had called her.

* * *

The prosecutor introduced the recording of the 911 call to police by Lawrence Landrum's sister. The record shows that Landrum's sister was hysterical as she described her brother's head injury to the dispatcher. The 911 call was received at 7:12 a.m. and the police arrived on the scene within minutes.

If believed, the defendant's alibi witnesses' affidavits all support the defendant's contention that he was at the Healy house between 10:30 and 11:30 pm on the night of the shootings. The affidavits state that the defendant left the house at 11:30 or midnight to go to the store for more drinks. The affidavits do not establish what time the defendant returned from the store. If believed, the alibi witnesses' affidavits also establish that the defendant left the Healy house again at either 4:00 or 5:00 a.m. The 911 call established that the shooting occurred at approximately 7:00 a.m., since it is not credible that Landrum would have waited to call the police after being shot in the head and jumping out of a window to escape from the shooter. The defendant's alibi witnesses do not establish an alibi for the defendant for 7:00 a.m. when the shooting occurred. Therefore, the defendant's trial attorney was not ineffective for failing to call the alleged alibi witnesses who could not have testified as to where the defendant was at 7:00 a.m. on January 1, 2000.

*Hardrick*, slip op. at 2-3 (summary of inculpatory trial testimony omitted).

This Court agrees and finds that the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. The record indicates that counsel conferred with Petitioner and spoke with at least two of the proposed alibi witnesses, but elected not to call them. Counsel's decision was reasonable given that none of those individuals provided Petitioner with an alibi for the time when the shooting occurred – near 7:00 a.m. on January 1, 2000. The affidavits also do not establish that Petitioner is actually innocent of the charged offenses. Petitioner has failed to demonstrate that trial counsel erred or that he was prejudiced by counsel's decision not to present the witnesses at trial. Habeas relief is not warranted on this claim.[2]

---

[2]Given this determination, the Court need not address the issue of procedural default.

23

**E.      Ineffective Assistance of Appellate Counsel**

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel

was ineffective for failing to raise his ineffective assistance of trial counsel claim concerning

the alibi witnesses on direct appeal.  Respondent contends that this claim lacks merit.

In order to establish ineffective assistance of appellate counsel, a petitioner must satisfy

the *Strickland* standard and show that counsel's performance was deficient and that the deficient

performance was prejudicial.  *See Strickland*, 466 U.S. at 687.  It is well-established, however,

that a criminal defendant does not have a constitutional right to have appellate counsel raise

every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The

Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every "colorable" claim suggested by a client
> would disserve the ... goal of vigorous and effective advocacy .... Nothing in the
> Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly

left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59

(6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of

'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."

*See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).

"Generally, only when ignored issues are clearly stronger than those presented will the

presumption of effective assistance of appellate counsel be overcome."  *Monzo v. Edwards*, 281

F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and

prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious

24

from the trial record and would have resulted in reversal on appeal.  *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

The state trial court denied relief on this claim in denying Petitioner's motion for relief from judgment.  The court found that Petitioner could not establish that appellate counsel was ineffective because the foregoing claim of ineffective assistance of trial counsel lacked merit. *Hardrick*, slip op. at 4.  This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  Petitioner has failed to show that by omitting the ineffective assistance of trial counsel claim presented in his motion for relief from judgment (and on habeas review) appellate counsel's performance fell outside the wide range of professionally competent assistance.  Given that the underlying claim lacks merit, Petitioner cannot establish that appellate counsel was ineffective under *Strickland*.  Habeas relief is not warranted.

## V.      Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.  Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability ("COA") must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could

25

conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims.  *Id.* at 336-37.  When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists would not debate the Court's procedural ruling.  The Court therefore **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  February 10, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 10, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager